# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-12-08023-001-PCT-DGC |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | **AND ORDER** |
| Nicholas Archie Begay, | |
| Defendant. | |

TO THE HONORABLE DAVID G. CAMPBELL, SENIOR UNITED STATES DISTRICT JUDGE:

Pending before the Court is a Petition, filed on May 26, 2015, alleging three violations of supervised release. (Doc. 127.) The Court recommends that Defendant be brought in person before the district court for a revocation hearing and potential disposition.[1] The Court further recommends Defendant be found competent to proceed. The undersigned magistrate judge vacates his prior finding that Defendant was competent to proceed.

///

---

[1] Pursuant to a Standing Order of Referral, dated July 17, 2014, the Honorable David G. Campbell, Senior United States District Judge, referred the Petition to Revoke Supervised Release in the above-numbered case to the undersigned Magistrate Judge to conduct "Admit/Deny Hearings on Petitions for Revocation of Supervised Release" and "[a]s to evidentiary hearings on petitions to revoke probation or supervised release, the Magistrate Judge shall make the appropriate findings and recommendations and submit the necessary Report and Recommendation to the District Court."

**I.    Procedural Background.[2]**

On May 10, 2021, Defendant appeared by video teleconference for an initial appearance. (Doc. 229.) On May 26, 2021, Defendant appeared by video teleconference for an admit/deny hearing. (Doc. 232.) On July 14, 2021, the Court granted Defendant's Motion for Psychiatric Examination. (Doc. 239.) On September 9, 2021, the Court conducted a status conference regarding mental competency. Defendant refused to leave his cell and was not present for this hearing. (Doc. 242.) On September 29, 2021, the Court conducted a second status conference regarding mental competency. Defendant refused to leave his cell and was not present for this hearing.  (Doc. 243.) On October 19, 2021, Defendant was brought to a video teleconference room by United States Deputy Marshals and the Court conducted determination of counsel, competency, and revocation hearings. (Doc. 253.)

**II.    Right to an In-person Revocation Hearing.**

On October 19, 2021, Defendant and counsel were present for a hearing to determine whether Defendant intended to admit to an allegation or if a revocation hearing would be set. Defendant did not speak and did not waive his right to have a revocation hearing.  *See* Fed. R. Crim. P. 32.1(b)(2) ("Unless waived by the person, the court must hold the revocation hearing within a reasonable time in the district having jurisdiction."). Defendant also did not waive his right to appear in person at a revocation hearing. *See* Fed. R. Crim. P. 32.1(b)(1)(B)(i) (a defendant at a revocation hearing "is entitled to an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear."); *United States v. Rodriguez-Rios*, 856 Fed. Appx. 72, 73 (9th Cir. 2021) (finding "insufficient evidence that Rodriguez-Rios knew he had a right to consult counsel before deciding whether to waive his physical presence at sentencing" under the CARES Act).

The Court will recommend Defendant be brought to the courthouse for an in-person revocation hearing and potential disposition.

---

[2] The details of these hearings are described in detail in Section III(c) below.

### III. Competency Recommendation.

The Court recommends Defendant be found competent to proceed to a revocation hearing and disposition.

#### a. Issuance of a Report and Recommendation.

Local Criminal Rule 57.6(d)(8) directs magistrate judges to "[e]nter orders for examination to determine mental competency; hold hearings and conduct examinations to determine mental competency; and enter orders determining mental competency except any motion to involuntarily medicate a defendant in an effort to restore competency." The local rule is consistent with 28 U.S.C. § 636(b)(1)(A), which allows a district judge to "designate a magistrate judge to hear and determine any pretrial matter pending before the court" absent any listed exception. The Ninth Circuit has not addressed the issue. *See United States v. Garcia*, 2019 WL 8112169, at *1 (D. Haw. 2019) ("The Ninth Circuit has not directly addressed whether a magistrate judge must issue findings and recommendations to the district court or may issue orders regarding competency to stand trial under 18 U.S.C. § 4241."); *United States v. Gowadia*, 2009 WL 3526656, at *1 (D. Haw. 2009) (noting several courts direct magistrate judges to issue competency orders while others request report and recommendations).

No Circuit has addressed the issue, and district courts are split on whether magistrate judges should enter orders or reports and recommendations. *United States v. Millard-Grasshorn*, 603 F.3d 492, 496 (8th Cir. 2010) ("construing the magistrate judge's initial order as a § 4241(d) commitment order would raise the issue whether a criminal defendant's mental competency is an issue that magistrate judges may determine and, if so, the proper standard of district court review of this pre-trial determination."); *United States v. Rivera-Guerrero*, 377 F.3d 1064, 1069 (9th Cir. 2004) (finding that "an order authorizing involuntary medication is dispositive of a claim or defense of a party" and vacating magistrate judge involuntary medication order); *United States v. Nino*, 750 Fed. App'x. 589 (9th Cir. 2019) (affirming "district court's decision upholding the magistrate judge's commitment order for pre-trial competency restoration pursuant to 18 U.S.C. §

4241(d)" without addressing § 636 question); *United States v. Francisco*, 497 Fed. App'x. 412, 416, 2012 WL 5872589, at *4 (5th Cir. 2012) (affirming magistrate judge competency ruling without addressing § 636 issue).

In an abundance of caution, the Court will submit a report and recommendation regarding Defendant's competence. The undersigned vacates his prior finding that Defendant is competent to proceed and submits the following Report and Recommendation regarding competency.

### b.   Competency.

A defendant is incompetent if "the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d). This standard applies to defendants on supervised release. 18 U.S.C. § 4241(a).

To be competent to stand trial, a defendant must have the "capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope v. Missouri*, 420 U.S. 162, 172 (1975) (noting that "a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant" in competency proceedings); *United States v. Garza*, 751 F.3d 1130, 1134 (9th Cir. 2014) ("Relevant evidence falls into three broad categories: medical history, the defendant's behavior in and out of court, and defense counsel's statements about the defendant's competency."). "The heart of competency to stand trial is a defendant's present ability to consult with his lawyer with a reasonable degree of rational understanding and a factual understanding of the proceedings against him." *Maxwell v. Roe*, 606 F.3d 561, 568-69 (9th Cir. 2010) (citation and quotations omitted). The government has the burden of establishing, by a preponderance of the evidence, that the defendant is competent to stand trial. *United States v. Frank*, 956 F.2d 872, 875 (9th Cir. 1991).

A defendant also has a right to participate in a competency hearing. 18 U.S.C.

§ 4247(d) (a defendant "shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing.").

**c.  Findings.**

The Court recommends a finding that Defendant is competent to proceed in a revocation hearing and disposition.

**i.  Initial Hearings.**

On May 7, 2021, Defendant was arrested in this matter. (Doc. 231.) On May 10, 2021, Defendant appeared by video teleconference for his initial appearance. (Doc. 229.) Defendant appeared on the screen and raised his hand when the Court asked him to identify himself. (Audio Recording of May 10, 2021 Initial Appearance Hearing, 12:51:15 – 12:51:21.)[3] The Court advised Defendant of his right to remain silent and his right to counsel. (*Id.*, 12:51:25 – 12:51:46.) The Court asked Defendant if he understood these rights and he stated "Yes." (*Id.*, 12:51:47 – 12:51:52.) Defendant's counsel advised the Court that he met with Defendant and Defendant was waiving his right to a preliminary revocation hearing and submitting the issue of detention to the Court. (*Id.*, 12:51:53 – 12:52:07.) The Court and Defendant engaged in the following discussion:

> COURT:  Mr. Begay that means that I'll make a decision on detention now and we'll set your next hearing for what we call an admit deny hearing that will be later this month. Is that how you agree to proceed?
>
> DEFENDANT:  [Unclear response by Defendant.]
>
> COURT:  Let me tell you that first you have a right to a preliminary revocation hearing, it's a hearing to determine if there's enough evidence for the petition to go forward. Your attorney indicates that you're giving up your right to that hearing, Is that correct?
>
> DEFENDANT:  Yes.
>
> COURT:  Alright. We're setting your matter then for an admission or denial hearing for the 26th of May at 3pm. So May

---

[3] There is no written transcript for Plaintiff's hearings before this Court. Instead, the hearings were recorded and preserved on the CourtSmart audio system. Thus, the Court will cite to specific timestamps within the audio recording of the appropriate hearing being discussed.

- 5 -

>   26th at 3pm that's your next court date. Your attorney also said that you're giving up your right to the detention hearing; so I'll make that decision now. Is that how you agree to proceed?
>
>   DEFENDANT:   Yes.
>
>   COURT:   I did review your case. I do find you are a flight risk, so you'll be detained while the matter goes forward. But May 26th at 3pm is your next court date. [I'll see if] Mr Rael wants to say anything else to you before we're done. Mr. Rael?
>
>   DEFENDANT'S COUNSEL: No, we spoke earlier.
>
>   COURT:   Alright Mr. Rael that's all for your case today. Thank you. I'm sorry, Mr. Begay, thank you.

(*Id.*, 12:52:08 – 12:53:26.)

On May 26, 2021, a status hearing was held in Defendant's case. (Doc. 232.) Defendant consented to appear by video teleconference. (Audio Recording of May 26, 2021 Status Hearing, 2:58:15 – 2:58:30.) Defendant spoke with the Court and answered numerous questions. Defendant's counsel advised that Defendant wished to enter a denial. (*Id.*, 2:58:30 – 2:58:43.) The following discussion ensued:

>   DEFENDANT:   "Oh Mr. James."
>
>   COURT:   "He's here in the courtroom. Do you have a question?"
>
>   DEFENDANT:   "It's actually admit. I didn't get a chance to tell you on the phone."

(*Id.*, 2:58:43 – 2:58:55.) The Court advised Defendant of his right to enter a denial or an admission, and Defendant stated he wanted to make an admission. (*Id.*, 2:58:56 – 3:00:18.)

The Court placed Defendant under oath and began an admission proceeding. (*Id.*, 3:01:38 – 3:02:49.) After a few preliminary questions, the Court asked Defendant: "When you spoke with Mr. Rael about your case, did you understand the things you talked about?" Defendant stated "no." (*Id.*, 3:03:10 – 3:03:19.) Defendant's counsel requested the Court reset the hearing so he could confer with Defendant. (*Id.*, 3:03:20 – 3:04:00.) The matter was reset to June 4, 2021. On June 3, 2021, the Court granted counsel's request to reset the matter to July 8, 2021. (Doc. 234.)

- 6 -

On July 2, 2021, Defendant's counsel filed a motion for psychiatric examination of Defendant. (Doc. 235.) On July 14, 2021, the Court granted the motion and appointed Dr. John Walker to conduct the examination. (Doc. 239.)

### ii. Dr. Walker's Report.

On August 9, 2021, Dr. Walker conducted a neuropsychological consultation with Defendant at the request of the Court. (Doc. 240.) On August 10, 2021, Dr. Walker completed a Neuropsychological Report based on that consultation, which the Court filed. (Doc. 240.) In his report, Dr. Walker wrote that he met with Defendant "via virtual platform." (*Id*. at 1.) Dr. Walker attempted to explain to Defendant the reason for the consultation and asked questions about Defendant's medical history. Defendant responded belligerently, and repeatedly told Dr. Walker to "Shut the fuck up bitch." (*Id*. at 2.) Regarding Defendant's bellicosity, Dr. Walker advised it "was unclear as to whether this was volition in nature of if, in fact, he was making attempts to appear more impaired than is the case. This remained unclear given his lack of participation in the evaluation." (*Id*. at 3.)

Dr. Walker concluded that "[b]ased upon all available current information, it is my opinion that Mr. Begay is competent to stand trial." (*Id*.) Dr. Walker noted that Central Arizona Florence Complex records reflected that Defendant had been "seen and evaluated by multiple nurses and multiple behavior health professionals[,]" but "[t]here was no notation of any mental health difficulties, other than possible suicidal thinking in May or 2021. On all other occasions, Mr. Begay apparently was able to be seen by various nurses, medical professional and behavior health professionals and was able to articulate his needs[.]" (*Id*. at 4.) Defendant was seen by health professionals on May 8, 19, and 25, 2021. (*Id.* at 3.) Defendant's Comprehensive Mental Health Evaluation on May 8, 2021 noted Defendant was "oriented on all spheres, exhibited normal affect and speech, exhibited appropriate thought content, and his intellectual ability was estimate to be average or above average." (*Id*. at 3.)[4]

---

[4] The Court notes two additional entries in the Court record. On April 3, 2015, a Southwest Behavioral Health assessment by clinician Connie Forrester of Defendant noted that

- 7 -

### iii. Interim proceedings.

On September 9, 2021, the Court held a status conference with the parties. (Doc. 242.) Defendant refused to appear in the video teleconference room. After a discussion with the parties, the matter was reset. (*Id.*) On September 29, 2021, the Court held a status conference. (Doc. 243.) Defendant again refused to appear for the hearing. The Court reset the matter for October 19, 2021 and authorized the use of reasonable force for deputies to secure Defendant's appearance in the video teleconference room. (*Id.*)

On October 18, 2021, Defendant's counsel filed a motion to determine counsel. (Doc. 246.)

### iv. Determination of Counsel, Competency, and Revocation Hearing.

On October 19, 2021, the Court held a status conference regarding Defendant's competency and the motion to determine counsel. (Doc. 252.) Defendant was accompanied by two USMS deputies, and he appeared in the VTC room while seated and shackled to a rolling chair. (Audio Recording of October 19, 2021 Status Conference Re: Mental Competency, 3:24:15 – 3:24:40.) He was also wearing a spit-prevention mask that covered his entire head. (*Id.*, 3:24:41 – 3:24:48.) The Court addressed Defendant and asked if he could hear the Court. (*Id.*, 3:25:00 – 3:25:05.) He did not respond. USMS Deputies confirmed the video and audio was working in the VTC room. (*Id.*, 3:25:06 – 3:25:15.) The deputy stated that when they went to the cell to bring Defendant to the VTC room, Defendant would not talk with them but would just "cuss." (*Id.*, 3:25:16 – 3:25:26.) Defendant was also "spitting," so the deputies affixed a spit guard to his head. (*Id.*, 3:25:26 – 3:25:35.) The Court repeatedly asked Defendant if he was willing to talk with the Court, but he was silent. (*Id.*, 3:25:36 – 3:26:20.) Defendant was advised that he had a right to be present in court and to participate in the hearing. (*Id.*, 3:26:21 – 3:27:30.) Defendant did not respond. The Court advised Defendant that new counsel would be assigned to him if he wished; Defendant remained silent. (*Id.*, 3:27:30 – 3:28:05.)

---

Defendant hears voices and sees pentagrams, but had never been hospitalized for mental health treatment. (Doc. 228 at 20.) The Presentence Report, prepared on October 23, 2012, states that "the defendant has never been under the care of mental health professionals and does not display symptoms suggesting serious emotional problems." (Doc. 228 at 48.)

The Court determined that a change of counsel was not warranted because there was no likelihood that replacing Defendant's current counsel would change any outcome in the proceedings. (*Id.*, 3:28:06 – 3:28:33.) The Court also found that Defendant was competent to proceed. (*Id.*, 3:29:22 – 3:31:40.)

The Court then held an evidentiary hearing regarding Allegation A of the petition. United States Probation Officer Aurelia Barlow testified, and the conviction documents were admitted to prove Defendant's commission of a felony offense while on supervision in this case. (*Id.*, 3:43:51 – 4:04:32.) The Court found Defendant would be "no worse off" if the Court conducted an evidentiary hearing and allowed Defendant to have the matter reviewed de novo by Judge Campbell. (*Id.*, 3:41:30 – 3:42:50.) But consent by a defendant is required, so that decision was incorrect and this Court must refer the matter to the district court for revocation hearing.[5]

At the conclusion of the hearing, the Court directed defense counsel to make one more trip to see Defendant to determine if Defendant would speak to him or speak about the case. (*Id.*, 4:00:00 – 4:01:40.) The Court told Defendant that the Court would conduct a new evidentiary hearing if Defendant wished so that Defendant could participate in a new hearing. (*Id.*, 4:01:40 – 4:02:12.)

On November 2, 2021, Defendant's counsel filed a notice advising the Court that

---

[5] Consent by a defendant is required in this Circuit for a magistrate judge to preside over the revocation hearing and issue a report and recommendation. *See United States v. Colacurcio*, 84 F.3d 326, 334 (9th Cir. 1996) (holding that "magistrate judges do not have authority under the Federal Magistrates Act to conduct a probation revocation hearing without defendant's consent" when submitting a report and recommendation). *See also* 28 U.S.C. § 636(b)(1)(B) ("a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition"; 18 U.S.C. § 3401(i) ("A district judge may designate a magistrate judge to conduct hearings to modify, revoke, or terminate supervised release, including evidentiary hearings, and to submit to the judge proposed findings of fact and recommendations for such modification, revocation, or termination by the judge"); Local Criminal Rule 57.6(d)(4) (a magistrate judge shall [r]eview and submit recommendations to a District Judge on all petitions for revocation of probation and supervised release and conduct necessary proceedings leading to the potential revocation of probation and supervised release and, upon the express consent of the parties and order of referral from a District Judge, take all admissions to violations of probation or supervised release conditions."); *United States v. Jennings*, 708 Fed. App'x. 995, 997 (11th Cir. 2017) (noting "our sister circuits are split on whether § 3401(i) requires a district court to obtain a defendant's consent before designating a magistrate judge to conduct a supervised release revocation hearing.").

counsel attempted to meet with Defendant and had "no additional information to present regarding Mr. Begay's desire to participate in these proceedings." (Docs. 256, 257.)

### v. Findings Regarding Competency.

The undersigned magistrate judge concludes by a preponderance of the evidence that Defendant is not suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. Certainly, Defendant has engaged in highly erratic behavior. He has refused to appear for court proceedings and refused to speak with the Court when he was brought into a video teleconference room. He has also refused to speak with his attorney on multiple occasions.

But Defendant was virtually present and spoke with the Court on two occasions: his initial appearance and his admit/deny hearing. Defendant spoke with his attorney prior to those hearings. Defendant has not lost the ability to speak, even though he now chooses not to speak to the Court or his attorney. Defendant spoke with Dr. Walker, even though he was belligerent and rude. Dr. Walker noted that "it is incumbent on the mental health professional to identify a specific mental disease, defect or disability that was would lead to incompetency. In the absence of the ability to identify a mental disease, defect or disability, one is presumed to be competent." (Doc. 240 at 4.) Dr. Walker did not discern a mental disease and found Defendant to be competent. (*Id.*) The Court notes that Defendant was imprisoned for several years prior to his arrest in this matter. He did not appear incompetent when he met with medical personnel, his attorney, and the Court in May of 2021. Defendant demonstrated an understanding of the proceedings when he told the Court at the admit/deny hearing that his attorney was incorrect, and that he wished to enter an admission. The Court concludes that a mental disease did not appear to such a degree in June and July of 2021 that it rendered Defendant incompetent.

For an unknown reason, Defendant has now chosen not to cooperate in these proceedings. That choice does not render him incompetent. Rather, the evidence suggests that Defendant does understand the nature of the criminal proceedings and the potential

consequences; and he is able to assist in his defense should he choose to do so. As recently stated by the Ninth Circuit:

> Our circuit's precedent is clear: [S]trong evidence of a serious mental disease or defect is not enough to raise a genuine doubt as to a defendant's competency. There must also be a clear connection between that disease or defect and some failure by the defendant to understand the proceedings or assist in his own defense. Even a mentally deranged defendant is out of luck if there is no indication that he failed to understand or assist in his criminal proceedings.

*United States v. Telles*, --- F.4th --- , 2021 WL 5322677, at *7 (9th Cir. July 29, 2021) (citations and quotations omitted). *See also United States v. Garza*, 751 F.3d 1130, 1136 (9th Cir. 2014) ("A defendant who refuses to work with his lawyer out of spite alone is not incompetent even if that defendant has a serious mental disease or defect."); *Grant v. Brown*, 312 Fed. App'x 71, 73 (9th Cir. 2009) ("[M]ental illness does not necessarily equate to incompetence.").

**IV.  Orders and Recommendation.**

Based on the foregoing and pursuant to 28 U.S.C. § 636(b) and LRCrim 57.6(d)(4), Rules of Practice for the District of Arizona,

**IT IS ORDERED** that the undersigned's October 19, 2021 Order finding Defendant to be competent to proceed (*see* doc. 252) is **vacated**.

**IT IS RECOMMENDED** by the undersigned magistrate judge that the Honorable David G. Campbell, Senior United States District Judge, find by a preponderance of the evidence that Defendant is **NOT** presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to assist properly in his defense.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(b)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

**IT IS FURTHER ORDERED** that the parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Rule 59(b)(2), Federal Rules of Criminal

Procedure. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Judge without further review. *See United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule 59, Federal Rules of Criminal Procedure.

Additionally, after consultation with the District Court:

**IT IS ORDERED** that the Final Disposition Hearing set for December 22, 2021 at 1:45 p.m. (*see* doc. 253) is **vacated**.

**IT IS FURTHER ORDERED** that a **Revocation Hearing** and **Final Disposition Hearing** regarding Allegation A is set on **January 5, 2022**, at **1:00 p.m.** before the Honorable David G. Campbell, Senior United States District Judge, in **Courtroom 603**, Sandra Day O'Connor U.S. Courthouse, 401 West Washington Street, Phoenix, Arizona. Defendant shall be brought in person to the courtroom for these proceedings. The Court authorizes the use of reasonable and necessary force for the jail staff and/or the USMS for the purposes of transporting Defendant to and from the courtroom for the hearing. Any objection to the Court conducting the revocation hearing and disposition hearing on the same date shall be filed with the Court at least 10 calendar days prior to the hearing.

**IT IS FURTHER ORDERED** that the U.S. Probation Department shall prepare a Disposition Report and the Defendant shall cooperate with the Probation Department in its preparation of the Disposition Report.

Dated this 19th day of November, 2021.

Honorable John Z. Boyle
United States Magistrate Judge